Santina **SIENA**, M.D. et al.

v.

**MICROSOFT CORPORATION.**

No. 2000–472–Appeal.

Supreme Court of Rhode Island.

May 9, 2002.

Jeffrey C. Schreck, Providence, for Plaintiff.

Patricia A. Sullivan, Deming E. Sherman, Jon Mason Anderson and David Tulchin, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court on March 12, 2002, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

### Facts and Travel

Santina Siena, M.D., and the law firm of Yesser, Glasson & Dineen (plaintiffs) brought suit against the Microsoft Corporation (Microsoft or defendant) alleging that Microsoft engaged in anticompetitive practices in violation of G.L.1956 chapter 36 of title 6, Rhode Island's Antitrust Act (Antitrust Act). The plaintiffs own or lease computers that employ Microsoft's Windows 98 as their operating systems. An operating system is a software application that provides a platform from which other software programs run and are managed and through which users can access a computer's hardware. Microsoft Windows 98 operating systems are typically pre-installed by the original manufacturer of the computer, as in the case of plaintiff Siena, or as in the case of plaintiff Yesser, Glasson and Dineen, are purchased as a CD ROM and installed on its Intel-based

personal computers.[1] Significantly, neither plaintiff purchased its personal computer or CD ROM directly from Microsoft. The plaintiffs' complaint alleged that Microsoft unlawfully exercised its monopoly power by licensing its Windows 98 operating system at a price that exceeded that which it could have charged in a competitive market. After a hearing in the Superior Court, the complaint was dismissed pursuant to Rule 12(b) of the Superior Court Rules of Civil Procedure for lack of standing under the Antitrust Act. The hearing justice was persuaded by defendant's argument that the bright-line rule adopted by the United States Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), barring suits by indirect purchasers of products sold in violation of antitrust laws, was applicable to plaintiffs' relationship with Microsoft and was fatal to plaintiffs' claims. As in the case in *Illinois Brick*, the hearing justice found that plaintiffs were indirect purchasers of a Microsoft product and, therefore, lacked standing to sue. The hearing justice similarly determined that the Microsoft End User License Agreements that all purchasers of Intel-based computers are required to accept as a condition of use of the product do not create a direct relationship between Microsoft and the purchasers sufficient to avoid the application of *Illinois Brick Co.* On appeal, plaintiffs argue that the hearing justice erred in finding that plaintiffs lacked standing under the Antitrust Act to assert their claims against Microsoft and that the licensing agreements amount to an exception to the holding in *Illinois Brick Co.*[2]

## Standard of Review

▮ A motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) should be granted only when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of the claim. *Bruno v. Criterion Holdings, Inc.*, 736 A.2d 99, 99 (R.I. 1999)(mem.). In reviewing such a motion on appeal, "we accept the allegations of the plaintiff's complaint as true and view them in the light most favorable to the plaintiff." *Id.* In the instant case, we accept as true that which the United States District Court for the District of Columbia found to be true in *United States v. Microsoft Corp.*, 84 F.Supp.2d 9 (D.D.C.1999), namely that the defendants have engaged in unfair and anticompetitive trade practices in violation of the Antitrust Act.[3] Howev-

1. Intel is a corporation that manufactures microprocessors for use in a computer's hardware. Computer manufacturers purchase these microprocessors from Intel for use in their Intel-based personal computers. Most computers manufactured throughout the world employ an Intel microprocessor and upwards of ninety percent of these Intel-based personal computers are shipped with a version of Microsoft Windows 98 pre-installed.

2. We are in receipt of two post-argument motions to supplement the counter-statement and reply memorandum of defendant, Microsoft. The first motion references *Berghausen v. Microsoft Corp.*, 765 N.E.2d 592 (Ind.Ct. App.2002), a case recently decided by the Indiana Court of Appeals and the second motion references *Vacco v. Microsoft Corp.*, 260 Conn. 59, 793 A.2d 1048 (2002), a case recently decided by the Connecticut Supreme Court. As there has been no objection, we grant the motions, however, we conclude that the cases add nothing to our analysis.

3. *United States v. Microsoft Corp.*, 84 F.Supp.2d 9 (D.D.C.1999) was subsequently reversed in part, affirmed in part and remanded in part in *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C.Cir.2001). The United States Court of Appeals for the District of Columbia Circuit affirmed the District Court's holding that Microsoft indeed was engaging in anti-competitive practices.

er, in order to pursue their claim, plaintiffs must show that they have standing to bring this litigation either through a direct grant of statutory standing or, in the alternative, they must qualify as direct purchasers of a Microsoft product because of the End Users License Agreements. Neither party satisfies these conditions.

## Discussion

■ Rhode Island's Antitrust Act is broadly drafted legislation intended to complement its federal counterpart. *See* chapter 36 of title 6. Section 6–36–2, entitled "Purpose—Rules of construction," specifically requires in subsection (b) that the Antitrust Act "be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable," except in cases in which the provisions of the chapter "are expressly contrary to applicable federal provisions as construed." Although plaintiffs have purchased and paid for a Microsoft product, no consideration passed directly to defendant from either plaintiff. Microsoft received compensation via a circuitous route of distributors and vendors and not from these plaintiffs, who are the ultimate consumers in the line of distribution. We are satisfied that these plaintiffs are indirect purchasers of a Microsoft product and that *Illinois Brick Co.'s* bright-line rule is the controlling authority respecting the question of standing.

## Indirect Purchasers

In *Illinois Brick Co.*, concrete block manufacturers engaged in the practice of price fixing in which defendants marketed their products to masonry contractors who sold to general contractors who in turn sold these products to the state of Illinois. *Illinois Brick Co.*, 431 U.S. at 726–27, 97 S.Ct. at 2065, 52 L.Ed.2d at 713. The state paid the inflated price and sought to recover from the concrete block manufacturers. *Id.* at 727–28, 97 S.Ct. at 2065, 52 L.Ed.2d at 713. The United States Supreme Court held that a party who was not a direct purchaser from the wrongdoer was ineligible to recover in an antitrust suit. *Id.* at 744–46, 97 S.Ct. at 2074–75, 52 L.Ed.2d at 724–25. In so holding, the Court reasoned that antitrust laws worked best when only the direct purchaser was granted standing to sue. *Id.* at 746, 97 S.Ct. at 2074–75, 52 L.Ed.2d at 725. To hold otherwise, the Court reasoned, would involve courts in the complex and factually intensive investigation of which purchaser actually suffered injury as a result of an anti-competitive practice. *Id.* Courts would be required to determine whether a middle man absorbed the cost or passed it on down the chain of distribution. The Court also recognized that in the course of modern commerce, a product is often purchased and resold and that each transaction could absorb some or all of the inflated price, thereby reducing the overall injury to each purchaser in the line to such a level as to eliminate any incentive to litigate. *Id.*

■ Before this Court, plaintiffs seek to distinguish the facts of this case from *Illinois Brick Co.'s* absolute bar to standing. Although plaintiffs are correct in maintaining that this state is free to interpret its own antitrust statutes to allow indirect purchasers to recover antitrust damages, the Antitrust Act contains no express provisions that grant standing to indirect purchasers to bring suit against manufacturers or any other indirect supplier. Moreover, § 6–36–2(b) enjoins us from a construction of the Antitrust Act that is not in harmony with federal antitrust law. Indirect purchasers are not, however, left defenseless under Rhode Island's statutory scheme. Indeed, § 6–36–

12 reserves to the Attorney General as *parens patriae,* the right to sue on behalf of indirect purchasers for monetary damages resulting from a violation of the Antitrust Act.[4] Thus, we are satisfied that by enacting § 6–36–12 the Legislature appropriately addressed any injustice that might arise as a result of the rule enunciated in *Illinois Brick Co.* The other cases plaintiffs cited in their brief are not, as plaintiffs argue, an erosion of the absolute bar to suits by indirect purchasers, but are cases that are readily distinguishable from *Illinois Brick Co.* We are of the opinion that under federal law and the Antitrust Act, standing to litigate antitrust violations rests with the direct purchaser or the Attorney General as *parens patriae.* In light of our determination that plaintiffs are not direct purchasers from Microsoft, plaintiffs have no standing to sue under the Antitrust Act. We therefore are satisfied that plaintiffs would not be entitled to relief from the defendant under any set of facts that could be proven and that the hearing justice did not err in granting Microsoft's Rule 12(b)(6) motion to dismiss.

### End User Licensing Agreements

■ The plaintiffs additionally argue that the End Users Licensing Agreements required of every Windows 98 user creates a relationship between Microsoft and plaintiffs that is an exception to the indirect purchaser bar enunciated in *Illinois Brick Co.* The plaintiffs argue that, as a result of the licensing agreements, they have contracted directly with Microsoft and are subject to Microsoft's direct control in all aspects of their use of Windows 98. Further, plaintiffs submit that they have received a direct warranty from Microsoft and that their remedies for breach of that warranty are directly controlled by Microsoft. We are not persuaded that an End User Licensing Agreement and a consumer warranty are sufficient to vest plaintiffs with standing to sue as direct purchasers. The licensing agreement is simply an agreement between the parties that the user will not infringe on Microsoft's copyright; it does not place the parties in direct purchaser privity with each other. Similarly, the warranty agreement is a common service provided by manufacturers to end users of their products. The warranty creates no special relationship between Microsoft and the consumer beyond its terms. The enormous number of potential litigants created by adopting such a warranty or end user license exception to *Illinois Brick Co.* is, in itself, instructive. We cannot attribute to the Supreme Court the intent to exclude from the holding in *Illinois Brick Co.* any manufacturer who employs a standard licensing agreement in aid of its copyright or provides a typical consumer warranty against defects in the manufacture of its products. Mindful of the directive of § 6–36–2(b) to construe the Antitrust Act in harmony with judicial interpretations of comparable federal antitrust statutes, we are of the opinion that these incidental agreements do not exempt plaintiffs claims from the purview of *Illinois Brick Co.*

4. General Laws 1956 § 6–36–12 provides in pertinent part:
"(a) The attorney general may bring a civil action in superior court in the name of the state, as *parens patriae* on behalf of persons residing in this state, to secure monetary relief as provided in this section for injuries sustained by the persons to their property by reason of any violation of this chapter.
" * * *
"(g) In any action under this section the fact that a person or public body has not dealt directly with the defendant shall not bar or otherwise limit recovery."

## Conclusion

Accordingly, for the reasons set forth herein, the plaintiffs' appeal is denied and dismissed and the judgment of the Superior Court is affirmed. The papers in this case are remanded to the Superior Court.