**Supreme Court**

No. 2011-85-Appeal.
(PC 10-3837)

Chariho Regional School District et al.　　:

　　　　　　　　v.　　　　　　　　　　　:

Deborah Gist, in her capacity as the　　　:
Commissioner of Elementary and
Secondary Education of the State of Rhode
Island et al.

NOTICE:　　This opinion is subject to formal revision before publication in the Rhode Island Reporter.　Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Chariho Regional School District et al.      :

v.      :

Deborah Gist, in her capacity as the      :
Commissioner of Elementary and
Secondary Education of the State of Rhode
Island et al.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.** The plaintiffs, the Chariho Regional School District and the Cranston School Department, appeal from an October 19, 2010 judgment of the Providence County Superior Court dismissing their complaint, pursuant to which the plaintiffs had sought a writ of mandamus. The plaintiffs contend that the hearing justice erred when, in applying Rule 12(c) of the Superior Court Rules of Civil Procedure, he granted the motions to dismiss the plaintiffs' complaint; those motions had been filed by Deborah Gist, the Commissioner of Elementary and Secondary Education of the State of Rhode Island (the Commissioner), and Frank T. Caprio, the then-General Treasurer of the State of Rhode Island (the Treasurer).[1] They allege that the hearing justice erred in finding: (1) that the

---

[1] Frank T. Caprio was General Treasurer of the State of Rhode Island when the complaint was filed, when the motions to dismiss were filed, and when the hearing justice granted the motions to dismiss. However, Gina Raimondo held the position of General Treasurer at the time when this appeal was filed, and she continues in that position. Accordingly, when we refer to "the Treasurer" in this opinion, we should be understood as referring to whichever of those individuals held the position of General Treasurer at the point in time in question. We further note that Deborah Gist, Gina Raimondo, and Frank T. Caprio were all sued only in their official capacities.

- 1 -

Commissioner's decision to deny the plaintiffs reimbursement for certain employees' salaries and benefits was discretionary in nature, rather than ministerial; and (2) that the plaintiffs had an adequate remedy at law.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel [2]

This case began when plaintiffs commenced a proceeding before the Commissioner, seeking reimbursement to which they contend they are entitled pursuant to Section IV(A)(2) and Section IV(A)(3) of the Regulations of the Board of Regents Governing the Management and Operation of Area Vocational-Technical Centers in Rhode Island (the Regulations). Specifically, plaintiffs argued that, in accordance with the Regulations, they should be reimbursed for the "salary, fringe benefits, and travel expenses" of: (1) the directors of their vocational-technical programs; and (2) the guidance counselors working in their vocational-technical programs. The Commissioner granted the motion of the Department of Education to dismiss the action on the grounds that the Regulations were "trump[ed]" by G.L. 1956 § 16-7.1-19, which created a vocational-technical equity fund.[3] The plaintiffs timely appealed to the Board of Regents for Elementary and Secondary Education (the Board of Regents).[4]

---

[2]     It should be noted that the facts relevant to this appeal are not in dispute.

[3]     See Part II.C., infra, for a more detailed discussion of G.L. 1956 § 16-7.1-19.

[4]     The Board of Regents upheld the Commissioner's granting of the Department of Education's motion to dismiss plaintiffs' action. The plaintiffs then appealed to the Superior Court from the decision of the Board of Regents; that appeal is pending. What is before us is only the complaint filed by plaintiffs seeking a writ of mandamus which would order that the funds to which plaintiffs posit they were entitled for the 2010 fiscal year be dispensed. We are not at this time addressing plaintiffs' appeal to the Superior Court from the decision of the Board of Regents. See Grady v. Narragansett Electric Co., 962 A.2d 34, 42 n. 4 (R.I. 2009) (referencing "our usual policy of not opining with respect to issues about which we need not

While that appeal was pending, on June 30, 2010 (the last day of the 2010 fiscal year), plaintiffs filed a complaint in Superior Court alleging that the Commissioner and the Treasurer were required to release the funds to which they claim they are entitled for reimbursement of certain costs associated with the operation of career and technical centers pursuant to the Regulations; they asked the court to compel the payment of the funds through issuance of a writ of mandamus.[5]

The Commissioner and the Treasurer each filed motions to dismiss the complaint, pursuant to Rule 12(c).[6] The Commissioner argued that: (1) plaintiffs had no "clear legal

opine" and stating that "we need not reach that issue at this time in order to decide the case before us").

To the extent that it has been suggested that the Superior Court in this action did not have subject matter jurisdiction because the appropriate avenue for appealing from a decision of the Board of Regents is by petitioning this Court for a writ of certiorari, we find that argument to be meritless; this action was filed before the Board of Regents issued a decision and was presented by plaintiffs as an action for a writ of mandamus, not an appeal from the Board of Regents. The Superior Court has jurisdiction over an action seeking a writ of mandamus. See G.L. 1956 § 8-2-16 ("The [S]uperior [C]ourt * * * concurrently with the [S]upreme [C]ourt shall have jurisdiction of writs of habeas corpus, mandamus, quo warranto, and informations in the nature of quo warranto.") (emphasis added); see also Higgins v. Tax Assessors of Pawtucket, 27 R.I. 401, 409-11, 63 A. 34, 37-38 (1905). Therefore, there was subject matter jurisdiction in the instant case, regardless of whether or not there was a likelihood of plaintiffs prevailing. See generally Narragansett Electric Co. v. Saccoccio, 43 A.3d 40, 44 (R.I. 2012) (stating that "[t]he term subject matter jurisdiction, when properly used, refers only to the court's power to hear and decide a case and not to whether a court having the power to adjudicate should exercise that power") (internal quotation marks omitted).

[5] The complaint confines itself merely to the funds that plaintiffs contend are due for the 2010 fiscal year; consequently, despite the fact that, in the proceeding before the Commissioner and the Board of Regents plaintiffs were seeking funds dating back to 1990, the case before us deals only with the funds relative to the 2010 fiscal year.

[6] The Commissioner and the Treasurer titled their motions differently but both motions are clearly based on the same rule—namely, Rule 12(c) of the Superior Court Rules of Civil Procedure. Rule 12(c) reads in pertinent part as follows: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

entitlement" to the funds at issue; and (2) that the Commissioner had "no ministerial duty" to reimburse plaintiffs. The Treasurer argued: (1) that the General Treasurer lacked the capacity to reimburse plaintiffs without the authorization of the Commissioner; and (2) that plaintiffs failed to exhaust the administrative remedies available to them. The hearing justice granted both motions. He stated that there was an adequate remedy at law available to plaintiffs in the form of the appeal from the decision of the Board of Regents. Moreover, he held that the "whole notion of computing funds and who should cut loose moneys is an act of discretion on the part of the administrative authorities at the Department of Education and ultimately with the State Treasury, it is not just something done by * * * a functionary sitting somewhere." The plaintiffs appeal that decision.[7]

## II

## Analysis

## A

## Standard of Review

The plaintiffs appeal from a grant of defendants' motions for judgment on the pleadings pursuant to Rule 12(c). Rule 12(c) "provides a trial court with the means of disposing of a case early in the litigation process when the material facts are not in dispute after the pleadings have been closed and only questions of law remain to be decided." Haley v. Town of Lincoln, 611 A.2d 845, 847 (R.I. 1992). For the purposes of our review "[a] Rule 12(c) motion is tantamount

---

[7]     The plaintiffs "readily acknowledge" in their brief before this Court that "their claim against the General Treasurer is derivative of and dependent on their claim against the Commissioner." Consequently, according to plaintiffs, "issuance of the writ to the General Treasurer is dependent on the issuance of the writ to the Commissioner." Thus, this Court will focus on the Commissioner's motion to dismiss—because if the Commissioner's motion to dismiss was properly granted, then, by plaintiffs' admission, the Treasurer's motion to dismiss was also properly granted.

- 4 -

to a Rule 12(b)(6) motion, and the same test is applicable to both * * * ." Collins v. Fairways Condominiums Association, 592 A.2d 147, 148 (R.I. 1991); see also Parente v. Southworth, 448 A.2d 769, 771 (R.I. 1982).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) this Court applies the same standard as the hearing justice, Narragansett Electric Co. v. Minardi, 21 A.3d 274, 278 (R.I. 2011)—namely, that the motion "should be granted only when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of the claim." Siena v. Microsoft Corp., 796 A.2d 461, 463 (R.I. 2002); see also Parente, 448 A.2d at 771. We are confined to the four corners of plaintiffs' pleadings and must assume that all the allegations in plaintiffs' pleadings are true; we must also "resolve any doubts in [the] plaintiff[s'] favor." Multi-State Restoration, Inc. v. DWS Properties, LLC, 61 A.3d 414, 416 (R.I. 2013) (internal quotation marks omitted); Minardi, 21 A.3d at 278; see also Siena, 796 A.2d at 463; Haley, 611 A.2d at 847.[8]

**B**

**Writs of Mandamus**

In order to properly address defendants' arguments, we deem it necessary to first discuss the law in this jurisdiction relative to the issuance of writs of mandamus.

We have described the issuance of a writ of mandamus as both an "extreme" and an "extraordinary" remedy.[9] City of Providence v. Estate of Tarro, 973 A.2d 597, 604 (R.I. 2009)

---

[8] We note that the Commissioner argues that we should apply a more deferential standard of review than that "usually applied to decisions involving Rules 12(b) and (c)." However, the standard of review which applies to a motion under Rule 12(c) is well settled; consequently, we decline the invitation to apply a different standard of review in this case.

[9] See also Marbury v. Madison, 5 U.S. (1 Cranch) 137, 168-69 (1803) ("Whenever * * * there is a right to execute an office, perform a service, or exercise a franchise

- 5 -

(internal quotation marks omitted); Muschiano v. Travers, 973 A.2d 515, 520 (R.I. 2009); see also School Committee of Cranston v. Bergin-Andrews, 984 A.2d 629, 648 (R.I. 2009); Krivitsky v. Town of Westerly, 849 A.2d 359, 362 (R.I. 2004). The United States Supreme Court has characterized a writ as "one of the most potent weapons in the judicial arsenal." Cheney v. United States District Court for the District of Columbia, 542 U.S. 367, 380 (2004) (internal quotation marks omitted).[10] Consequently, we have "clearly and repeatedly" held that a writ of mandamus is properly issued only when: "(1) the petitioner has a clear legal right to the relief sought[;] (2) the respondent has a ministerial duty to perform the requested act without discretion to refuse[;] and (3) the petitioner has no adequate remedy at law." Muschiano, 973 A.2d at 520 (internal quotation marks omitted); see also Bergin-Andrews, 984 A.2d at 648; Providence Teachers Union Local 958, AFT/RIFT, AFL-CIO v. Providence School Board, 748 A.2d 270, 272 (R.I. 2000); International Packaging Corp. v. Mayer, 715 A.2d 636, 638 (R.I. 1998). If those three "prerequisites have been shown, [then] it is within the sound discretion of the Superior Court justice to ultimately issue the writ." Martone v. Johnston School Committee, 824 A.2d 426, 429 (R.I. 2003); see also Muschiano, 973 A.2d at 521.

This Court has repeatedly defined a ministerial function as "one that is to be performed by an official in a prescribed manner based on a particular set of facts without regard to or the

_____

(more especially if it be in a matter of public concern, or attended with profit) and a person is kept out of possession, or dispossessed of such right, and has no other specific legal remedy, this court ought to assist by mandamus, upon reasons of justice, as the writ expresses, and upon reasons of public policy, to preserve peace, order and good government.") (internal quotation marks omitted).

[10]    See also Supervisory and Advisory Mandamus Under the All Writs Act, 86 Harv. L. Rev. 595, 596 (1973) (stating with reference to writs of mandamus that "[a]s extraordinary remedies, they are reserved for really extraordinary causes") (internal quotation marks omitted).

exercise of his own judgment upon the propriety of the act being done."[11] Estate of Tarro, 973 A.2d at 604 (internal quotation marks omitted); see Muschiano, 973 A.2d at 520-21; Union Station Associates v. Rossi, 862 A.2d 185, 193 (R.I. 2004); see also P.J.C. Realty, Inc. v. Barry, 811 A.2d 1202, 1205 (R.I. 2002) ("Under Rhode Island law, it is well settled that a writ of mandamus is appropriate when the duty to be enforced demands no special discretion, judgment or skill."). Additionally, if there are "unexhausted administrative remedies," that fact "may serve to prevent the issuance of a writ of mandamus." Muschiano, 973 A.2d at 521 (internal quotation marks omitted); see also New England Development, LLC v. Berg, 913 A.2d 363, 369 (R.I. 2007).

## C

### Clear Legal Right

We begin and end with the first requirement for a writ of mandamus—namely, whether or not plaintiffs had a clear legal right to the funds in question.

In order to address the question of whether plaintiffs had a clear legal right, we must first set forth the specific Regulations on which plaintiffs rely. Section IV(A)(2) of the Regulations reads in pertinent part as follows:

> "THE DIRECTOR'S SALARY, FRINGE BENEFITS, AND TRAVEL EXPENSES SHALL BE SET BY THE SCHOOL COMMITTEE WITH THE APPROVAL OF THE COMMISSIONER OF EDUCATION AND SHALL BE REIMBURSED 100% BY THE STATE."

Section IV(A)(3) reads in pertinent part as follows:

> "[Guidance counselors'] SALARIES, FRINGE BENEFITS, AND TRAVEL EXPENSES ARE TO BE SET BY THE SCHOOL

---

[11] The United States Supreme Court has cogently stated: "Mandamus is employed to compel the performance, when refused, of a ministerial duty, this being its chief use." Miguel v. McCarl, 291 U.S. 442, 451 (1934) (internal quotation marks omitted).

COMMITTEE OF THE ADMINISTERING SCHOOL DISTRICT CONSISTENT WITH THE APPROPRIATE LOCAL COLLECTIVE BARGAINING AGREEMENT AND SHALL BE REIMBURSED 100% BY THE STATE."

It is plaintiffs' contention that, in accordance with the above-quoted regulations, they had "the absolute right" to receive the funds at issue, unless the Board of Regents had amended the Regulations through a notice and comment procedure—which did not take place. They further point out that the state, in its budget for the 2010 fiscal year, appropriated funds to the Department of Education and that the scope of that appropriation was broad enough to encompass funding the salaries and expenses of the directors and guidance counselors.

On the other hand, the Commissioner posits that construing the Regulations as plaintiffs do is "at odds" with the Board of Regents' enabling legislation. The portion of the enabling legislation which is at issue reads:

> "In the preparation of the budget, the regents shall determine priorities of expenditures for elementary and secondary education purposes of state revenues and other public resources made available for the support of public elementary and secondary education among the various education agencies of the state. Nothing contained in this section shall authorize any individual or group of individuals to reallocate resources in a manner other than that prescribed in the budget as appropriations by the general assembly." G.L. 1956 § 16-60-4(5)(ii).

The Commissioner understands the last sentence of § 16-60-4(5)(ii) to support her contention that "specific appropriations made by the General Assembly subsequent to [the] * * * Regulations supersede the Regulations as a matter of law." Moreover, the Commissioner also contends that the Regulations cannot be interpreted as "appropriation

measures" (i.e., measures designed to direct the Commissioner how to appropriate funds) because the General Assembly has the "exclusive power to appropriate."[12]

The Commissioner also points out that, since the time when the Regulations were enacted, the General Assembly has changed the way it appropriates funds for vocational-technical schools by establishing a vocational-technical equity fund, which is provided for in § 16-7.1-19. Section 16-7.1-19(a) reads as follows:

> "The general assembly recognizes the need to support the academic instruction component of vocational education for students enrolled in career and technical education programs. To accomplish this, the general assembly shall appropriate some sum per student for each student who attends a locally operated career and technical center based on the enrollments reported to the department of elementary and secondary education for the reference year as defined in § 16-7-16. The sum shall be five hundred dollars ($500) per student. Funding under this section will be limited to those students enrolled in programs that are part of

_____

[12]       The Commissioner also directs this Court's attention to G.L. 1956 § 16-45-7, which she contends is also in conflict with the Regulations.  Section 16-45-7 reads as follows:

> "(a) The general assembly shall appropriate any sum as it may deem necessary for the purpose of reducing local district area vocational technical school tuition. All districts which send students to state operated schools which are funded through the operations aid formula shall not be entitled to receive funds under this section for students attending those schools.
>
> "(b) Each year one hundred percent (100%) of the approved regional vocational school expenditures for the reference year is appropriated. The commissioner of elementary and secondary education shall be responsible for approving regional vocational technical school budgets and eligible programs and shall promulgate rules and regulations for the approval of budget expenditures and operation of the schools. All funds provided by this section will be ineligible for reimbursement under the provisions of chapter 7 of this title."

The plaintiffs contend that there is nothing inconsistent between the above-quoted statute and the Regulations.

the career and technical education system as approved by the department of elementary and secondary education."

It is the Commissioner's argument that, once the "funding formula" for vocational-technical education was amended by the General Assembly, plaintiffs no longer had a "clear legal right" to the funds based on the terms of the Regulations. Finally, the Commissioner avers that the General Assembly in fact did appropriate funds to plaintiffs for vocational-technical education in the 2010 fiscal year, which funds, she contends, "exceeded the total amount of the School Departments' claims." (Emphasis in original.)

The plaintiffs respond by arguing that the creation of the vocational-technical equity fund did not render nugatory the Regulations because, wherever possible, statutes and regulations are to be harmonized. It is the contention of the plaintiffs that § 16-7.1-19 and the Regulations can "easily be read together." They posit that § 16-7.1-19 makes an appropriation for the "academic instruction component of the vocational education" and that the Regulations provide for expenditures for the directors and guidance counselors; they conclude that "[o]ne does not preclude the other, and both can be given effect."

Certainly plaintiffs' contentions may have merit. The plaintiffs are correct that the Regulations represent legislative rules, because they were enacted by the Board of Regents pursuant to its enabling legislation and after a notice and comment procedure. See Great American Nursing Centers, Inc. v. Norberg, 567 A.2d 354, 356-57 (R.I. 1989). Moreover, as we have recognized, legislative rules do have the "force and effect of law," and the party challenging a legislative rule must rebut the "presumption of validity [which] attaches to [the] * * * rule." Id. at 357; see also Henry v. Earhart, 553 A.2d 124, 126-27 n. 1 (R.I. 1989); Lerner v. Gill, 463 A.2d 1352, 1358 (R.I. 1983). The Regulations state that the funds: "SHALL BE REIMBURSED 100% BY THE STATE." In our view, the argument by plaintiffs that it is

clear from the unambiguous, plain language of the Regulations that the Commissioner (and in turn the Treasurer) must act to effectuate the dispersal of the funds in question is, at the very least, non-frivolous. See State v. Hazard, 68 A.3d 479, 485 (R.I. 2013) ("[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.") (internal quotation marks omitted).

However, even if we treat plaintiffs' contentions as being accurate and resolve any doubt in their favor, we are still confronted with the Commissioner's arguments: (1) that construing the Regulations to require the Commissioner to pay the funds at issue is "at odds" with the Department of Education's enabling legislation (as codified in § 16-60-4(5)(ii)); and (2) that the General Assembly's enacting § 16-7.1-19 in 2000 (approximately ten years after the Regulations were enacted) changed the method of funding vocational-technical schools. See Multi-State Restoration, Inc., 61 A.3d at 416. With respect to the Commissioner's first argument, we have held that "[a]n agency cannot modify the statutory provisions under which it acquired power * * * ." Little v. Conflict of Interest Commission, 121 R.I. 232, 236, 397 A.2d 884, 886 (1979); see also Labor Ready Northeast, Inc. v. McConaghy, 849 A.2d 340, 345 (R.I. 2004). In the instant case, the enabling legislation expressly states that:

> "Nothing contained in this section shall authorize any individual or group of individuals to reallocate resources in a manner other than that prescribed in the budget as appropriations by the general assembly." Section 16-60-4(5)(ii).

As such, the Commissioner's contention that the Regulations are in conflict with the enabling legislation, like plaintiffs' contentions, also seems to potentially have merit.

Moreover, with respect to the second argument of the Commissioner, we have repeatedly held that "[i]t is a basic tenet of administrative law that the rule-making power of an administrative body may not abrogate state law dealing with the same subject." Reback v.

- 11 -

Rhode Island Board of Regents for Elementary and Secondary Education, 560 A.2d 357, 358 (R.I. 1989); see also Town of Smithfield v. Churchill & Banks Companies, LLC, 924 A.2d 796, 802 (R.I. 2007) (holding that a deadline set forth in a statute "trump[ed]" any administrative regulation because "the general provisions of a legislative rule must give way to specific statutory language"). In the instant case, § 16-7.1-19, which was enacted ten years after the Regulations, appears upon our review to alter the means by which the state funds vocational-technical education. Therefore, the Commissioner also has a potentially meritorious argument that the Regulations are "trump[ed]" by state statute.[13] Town of Smithfield, 924 A.2d at 802; see also Ridgewood Homeowners Association v. Mignacca, 813 A.2d 965, 976 (R.I. 2003) ("Generally, when two ordinances irreconcilably conflict one with the other, we shall give effect to the more recent enactment * * * .").

Accordingly, we hold that it has been established beyond a reasonable doubt that plaintiffs do not have a clear legal right to be reimbursed for the salaries, fringe benefits, and travel expenses of the directors and guidance counselors working in their vocational-technical schools. See Krivitsky, 849 A.2d at 363 (holding that, "given the confusion and uncertainty that the * * * general and specific provisions of the ordinance created about which town officials actually had to approve the license [at issue] before the town could issue it, [the plaintiff] possessed no clear legal right to the issuance of the license"); see also Minardi, 21 A.3d at 278.

---

[13] The plaintiffs rebut the contentions of the Commissioner, arguing that the Regulations and § 16-7.1-19 are not in conflict and that § 16-7.1-19 did not impliedly repeal the Regulations. However, the Court's concern in this opinion is not which party is correct as a matter of law but rather whether plaintiffs have a clear legal right. We reiterate that we are making no determination about the merits of the parties' contentions. Our holding is narrow; we hold only that plaintiffs have no clear legal right to the funds in question, even if all of the allegations in their complaint are deemed to be accurate.

We need delve no further into the plaintiffs' contentions because the plaintiffs must meet every prong of the standard for issuing a writ of mandamus.[14]  See Muschiano, 973 A.2d at 520. Since the plaintiffs in the instant case cannot do so under any set of facts, even when we treat all of the allegations contained in their complaint as if they were true, we perceive no error in the hearing justice's grant of the motions to dismiss filed by the defendants.

## III

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court granting the defendants' motions to dismiss.  The record in this case may be remanded to that tribunal.

---

[14]  The plaintiffs devote most of their brief to discussing their contentions that: (1) the Commissioner does not have discretion to decide whether or not to release the funds at issue (i.e., that it is a ministerial duty); and (2) that plaintiffs did not have an adequate remedy at law with regard to the 2010 fiscal year.  The Commissioner and the Treasurer also discuss the issues of discretion and an adequate remedy at law.  However, we need not detail those contentions due to the fact that we can decide this case on the basis of the first requirement for a writ of mandamus.  See Calise v. Curtin, 900 A.2d 1164, 1169 (R.I. 2006) ("[W]e leave this issue for another day in another case."); see generally PDK Laboratories Inc. v. United States Drug Enforcement Administration, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J. concurring) (stating that "the cardinal principle of judicial restraint" is that "if it is not necessary to decide more, it is necessary not to decide more").



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Chariho Regional School District et al. v. Deborah Gist, in her capacity as the Commissioner of Elementary and Secondary Education of the State of Rhode Island et al.

**CASE NO:** No. 2011-85-Appeal.
(PC 10-3837)

**COURT:** Supreme Court

**DATE OPINION FILED:** May 30, 2014

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice William P. Robinson III

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Stephen J. Fortunato, Jr.

**ATTORNEYS ON APPEAL:**

For Plaintiffs: Jon M. Anderson, Esq.

For Defendants: George M. Muksian, Esq.
Adam J. Sholes, Esq.