EDGAR J. ARCAND *vs.* YOLANDE V. HALEY *et al.*

JANUARY 11, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This bill in equity is before us on the appeal of the respondents Yolande V. Haley and her husband W. Wallace Haley from a decree of the superior court ordering them to join in conveying legal title to certain real estate to Mrs. Haley's brother, the complainant Edgar J. Arcand, on the ground that she holds the legal title thereto subject to a resulting trust in his favor.

Arcand, Inc., a corporation in which Edgar J. Arcand is a stockholder, was joined as a party complainant after the bill was filed. However, since Edgar J. Arcand is the principal party complainant, we shall herein refer to him as complainant. W. Wallace Haley, a physician, shall be referred to as Dr. Haley.

In his bill of complaint complainant alleges in substance that in April 1937 he purchased certain real estate located on Harris avenue in the city of Providence and took title in his sister's name, relying on her agreement at that time to hold the property for his benefit and to convey title to him upon his request; that he paid the consideration for the property out of his own funds; that respondents never contributed any money for the purchase of this property; that in 1959 he wanted the legal title conveyed to him; that respondents have refused to do so; and that in the circumstances Mrs. Haley holds the legal title in said property subject to a resulting or constructive trust in his favor.

In their answer respondents denied the pertinent allegations upon which complainant based his claim for relief and averred in substance that the property in question was purchased for them with their funds. In addition they set up the defense of laches and the statute of frauds.

However, since complainant is not seeking relief on the basis of an express trust, the statute of frauds is not an issue in this cause.

The complainant testified in substance that in April 1937 he made arrangements to buy the Harris avenue property for himself for use and occupancy by a business in which he was interested and that on April 21, 1937 he caused an agreement to be drawn between Tingley Land Co., Inc. and his brother George J. Arcand for the purchase thereof. The agreement is in evidence. It provides for a purchase price of $8,000 payable as follows: $500 upon the signing of the agreement, $2,500 upon the delivery of the deed and the balance of $5,000 by a note payable to the seller and secured by a mortgage on the property.

The complainant further testified that the $500 down payment was paid by his brother George with complainant's money; that prior to the time of the conveyance of the deed his brother George left the state on account of his health; that at the time complainant was involved in some financial problems with a bank; that for this reason he asked his sister Yolande if he could use her name as a straw and if she would sign the mortgage; that in talking to her it was understood that the property was to be put in his name when he was ready for it; and that she agreed to his requests.

He also testified that a few weeks before the closing he told Dr. Haley about the conversation with Yolande and the doctor said it would be "okay" with him; that she signed the mortgage and note; that at the closing at the title company on May 27, 1937 complainant paid the $2,500 on account of the purchase price and the title fee of $92.50 by checks from his own funds; that at his direction the deed was put in Yolande's name; and that respondents were not present at the time of the closing and never contributed any money for the purchase of the property. The

two checks representing the payments of $2,500 and $92.50 are in evidence.

The mortgage note is in evidence. It was payable to Tingley Land Co., Inc. Two years after the purchase the mortgage was refinanced with the Union Trust Company and Dr. Haley joined with his wife in signing the mortgage and note. The complainant testified that Arcand, Inc., in which he was a stockholder, occupied the premises pursuant to an agreement with him whereby the corporation agreed to pay the interest, principal, taxes and upkeep to him in lieu of rent; that he had never borrowed money from respondents for the purchase of this property; that no demand was ever made by Dr. Haley for repayment of money; and that he did not attempt to borrow money from the doctor in 1959.

The mortgage was paid off in 1957. According to complainant's testimony the mortgage payments and taxes were paid with the money paid by Arcand, Inc. in lieu of rent. He testified that in 1959 he and his brother Eugene with whom he was engaged in business separated and he took over the operation of the Providence business; that for personal reasons he then wanted the title put in his own name; that in July 1959 he asked his sister for a transfer of the title and she agreed to make the transfer; that two or three weeks later she informed him that her husband objected to the transfer on the ground that there was money due him for a loan he claimed he made to the corporation in 1936 or 1937; that the doctor refused to talk to him; that thereafter his sister caused a notice to vacate to be mailed to Arcand, Inc. and threatened an action of trespass and ejectment; and that as a result of his sister's action he filed the instant bill.

Barney M. Goldberg, president and treasurer of Tingley Land Co., Inc., testified that he represented the seller in the sale of the property in question. He stated that Mrs.

Haley's name was put on the deed at the direction of complainant and his brother George. George J. Arcand died in 1949. Mr. Goldberg testified that he never had any dealings with respondents and that the mortgage note was not signed in his presence; that the $500 deposit was paid by complainant in his presence; and the mortgage payments were made to him by complainant.

Doctor Haley's testimony is in substance a direct denial of complainant's testimony. He testified that in 1937 complainant and his brother visited him concerning the purchase of the property; that he gave them $3,000 in cash to buy it in his behalf for them to occupy; that Arcand, Inc. was to pay the interest, principal and taxes in lieu of rent; that later on in 1937 he loaned complainant and the corporation $8,000 in cash to purchase equipment and renovate the building; and that there was a balance of approximately $4,000 in interest and principal due him on such loan.

Doctor Haley admitted that he received no receipts for any of such funds; that he had never seen the property before the purchase and never had anything to do with it after its purchase; that he never asked for rent and never checked to find out if the taxes and mortgage were paid; and that he did not treat the property as his own for income tax purposes. He explained the cash payments by saying that at the time of the purchase he had $250,000 in cash and that it was not unusual for him to deal in cash.

Doctor Haley testified that in 1959 complainant wanted to borrow more money from him or wanted permission to borrow on the property; that his refusal to comply with such request caused complainant to become angry; and that complainant called his sister, told her he was in dire need of money and threatened her. He stated that his wife was not going to testify because she had no part in the purchase of the property and very little knowledge of it

and also because she had become ill as a result of complainant's threats. Mrs. Haley did not testify.

After the hearing the trial justice filed a rescript in which he carefully reviewed the testimony and exhibits and discussed the issues and law applicable thereto. He expressly stated that the testimony of Dr. Haley did not impress him; that the complainant's version of the transaction was credible and worthy of belief; and that a fair inference could be drawn from complainant's testimony that the sister's failure to make the conveyance was due to the influence of her husband. Having ruled out Dr. Haley's testimony because of his lack of credibility, he made specific findings of fact based on complainant's testimony.

He found that in April 1937 complainant bought the property for himself with his own funds; that at that time Mrs. Haley agreed to hold the legal title thereto for complainant's benefit and to convey it to him upon his request; that complainant trusted her and relied upon her agreement; that the mortgage, taxes, and other expenses in connection with the property were paid from money received from Arcand, Inc. pursuant to the agreement between that corporation and complainant; and that respondents never contributed any money for the purchase of the property.

On the basis of these findings the trial justice decided that complainant had established by credible, full, clear and convincing evidence that a resulting trust was created in his favor at the inception of the transaction and that he had therefore sustained the required burden of proof. On the issue of laches he found that in the circumstances complainant was not barred.

Under their reasons of appeal respondents contend that the trial justice misconstrued the law and the evidence and the weight thereof on both issues. The questions raised by their appeal are whether the evidence supports the findings

that a resulting trust has been established according to law and that complainant is not barred by laches.

It is well settled that a resulting trust which arises by operation of law may be proven by parol testimony. *Cetenich* v. *Fuvich*, 41 R. I. 107. As the court said in that case at page 116: "* * * when the purchase money is furnished by one party and the deed taken in the name of another a resulting trust is established in favor of the one who pays the money, the controlling question then being the ownership of the money which can be shown by parol evidence."

In discussing the question of the proof required to establish a resulting trust the court stated the rule as follows in *Reynolds* v. *Blaisdell*, 23 R. I. 16, at page 18: "In considering the evidence upon these issues it must be borne in mind that a. resulting trust of the character here sought to be established depends upon the proof of two facts: First, that the money or consideration paid for the conveyance to the nominal purchaser was the money or property of the claimant; and, secondly, that the claimant, while directing or permitting the conveyance of the legal title to the nominal purchaser, intended to retain the beneficial interest in himself."

In the same case at page 19, the court said that the burden of proof upon the question of the ownership of the purchase money or origin of the consideration is upon the complainant. It quoted with approval the following statement from 15 Am. & Eng. Ency. Law (2d ed.) 1174: "* * * it is a well-settled rule, not only that the burden of proof to prove the payment by him of the purchase money is upon him, but also that the evidence introduced in support of his claim must be clear, full, and satisfactory; and this is especially true where there has been a great delay in asserting the claim."

And in *Cutroneo* v. *Cutroneo*, 81 R. I. 55, 59, in discussing the question of proof required to establish a resulting trust.

the court said: "There must be clear, full and convincing evidence that *at the time of the conveyance* it was the intention and understanding that the contributor was to have the beneficial ownership * * *."

After careful consideration we are of the opinion that the trial justice's finding that a resulting trust was created is supported by clear, full and convincing evidence. Having discredited Dr. Haley's testimony and having considered Mrs. Haley's failure to testify, we think that the trial justice was justified in deciding that complainant's evidence met the required burden of proof of the creation of a resulting trust in his favor.

The question remains whether the trial justice erred in ruling that complainant was not barred by laches. Laches in legal significance is not mere delay, but delay that works a disadvantage to another. *Chase* v. *Chase,* 20 R. I. 202, 203; *Cavanagh* v. *Bostitch, Inc.,* 91 R. I. 239, 253, 162 A.2d 785, 792. As the court said in *Lombardi* v. *Lombardi,* 90 R. I. 205, 209, 156 A.2d 911, 913: " 'What constitutes laches is to be determined in the light of the circumstances of the particular case.' 30 C.J.S. Equity §115, p. 528. Ordinarily it is a question of fact and is addressed to the sound discretion of the chancellor. * * * And his decision in the matter will not be reversed on appeal unless it is clearly wrong." See also *Cetenich* v. *Fuvich, supra,* at page 117, where the court said: "There is no arbitrary rule by which the question of laches may be determined, that question must be decided upon the circumstances of each particular case * * *."

In discussing the question of laches in *Lombardi* v. *Lombardi,* 90 R. I. 205, at page 210, the court stated the rule as follows: "Such a stale claim to be barred by laches from relief in equity must be 'one that is first asserted after an unexplained delay of such great length as to render it difficult or impossible for the court to ascertain the truth of

the matters in controversy and do justice between the parties, or as to create a presumption against the existence or validity of the claim, or a presumption that it has been abandoned or satisfied.' 30 C.J.S. Equity §112, p. 521."

A reading of the trial justice's rescript clearly shows that he was fully aware of the law applicable on the issue of laches. In passing on this question he relied on complainant's testimony and took into consideration the fact that complainant was enjoying the use of the property since its purchase and that respondents had never treated it as their own. In brief he concluded that complainant had no reason to ask that the title be conveyed to him prior to 1959. In arriving at his decision on this issue he also considered Mrs. Haley's failure to testify either in person or by deposition and stated that he considered this factor was more important than the death of complainant's brother George in 1949.

In our opinion it is implicit in his ultimate finding on this issue that complainant's delay in requesting the transfer of title has been reasonably explained and that the death of George J. Arcand in 1949 did not operate to the disadvantage of respondents. His decision cannot be reversed by this court unless it is clearly wrong. *Lombardi* v. *Lombardi*, 90 R. I. 205, 209.

After carefully examining the record it is our opinion that his finding on the issue of laches is supported by the evidence. The respondents' contention that the trial justice misconstrued the law and the evidence and the weight thereof is not supported by the record. In the circumstances we cannot say that his decision is clearly wrong or that he erred in ordering Mrs. Haley and her husband to join in a conveyance of the legal title to the complainant.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Little & Little, Joseph T. Little, Francis E. Little, Jr.,* for complainant.

*Zietz, Sonkin & Radin, Leo Sonkin,* for respondents.