**SCHOOL COMMITTEE OF the CITY OF CRANSTON, et al.**

v.

**Michelle BERGIN–ANDREWS et al.**

**City of Cranston**

v.

**School Committee of the City of Cranston et al.**

Nos. 2008–289–Appeal, 2008–291–Appeal.

Supreme Court of Rhode Island.

Dec. 14, 2009.

Kevin J. McAllister, Esq., Providence, for Plaintiff.

Matthew T. Oliveiro, Esq. for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Chief Justice SUTTELL, for the Court.

This appeal arises from a morass of budgetary woe in the City of Cranston. The plaintiffs, the School Committee of the City of Cranston, and Superintendent of Schools, Peter L. Nero (hereinafter collectively referred to as the school committee), appeal from a judgment in favor of the defendants, the members of the Cranston City Council, Mayor Allan Fung, and Director of Finance Robert F. Strom (hereinafter collectively referred to as the city).[1] The school committee sought additional appropriations for the Cranston School Department for fiscal year (FY) 2007–2008 in what is commonly referred to as a "Caruolo action." The school committee also appeals from a judgment in favor of the city in the city's separate action for declaratory, injunctive, and mandamus relief. The two actions were consolidated in the Superior Court and also have been consolidated for the purposes of this appeal.

The school committee contends that the trial justice erred in concluding that the school committee did not meet the statutory prerequisites for filing a Caruolo action pursuant to G.L.1956 § 16–2–21.4; it also alleges a bevy of other errors. For the reasons discussed in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

The school committee's FY 2007–2008 financial travails can be traced to the spring of the previous school year. On February 28, 2007, the school committee requested from the city a budget of $129,865,082 for FY 2007–2008. The city council made an appropriation to the school department of $126,395,975 for FY 2007–2008 on May 9, 2007. The school committee then amended its budget to conform to this appropriation on June 19, 2007. At trial, Thomas Sweeney, Jr., a consultant retained by the school committee in April 2007, noted that the school department was already projecting a deficit for FY 2007–2008 at the time he was retained.

When subsequent school aid from the state proved lower than expected in July 2007, the city council further reduced its appropriation to the school department to $125,328,548. However, the school committee failed to amend its budget to reflect the reduced appropriation. Instead, the school committee apparently attempted to account for the discrepancy when it included a "budget reconciliation" item of $1,651,202 in its November 2007 revised budget. Even before the insertion of this budget reconciliation item, Mr. Sweeney was estimating a projected deficit of $3.5 million for FY 2007–2008 as early as September 2007. By December 6, 2007, the projected budget deficit totaled $3,888,190.

On November 30, 2007, the superintendent instituted a purchasing freeze. According to Mr. Sweeney, however, it is doubtful that many savings were realized as a result of this freeze because most of the expenditures for FY 2007–2008 already had been made, and the freeze was not stringently enforced.

By December 2007, the school committee was contemplating an action against

---

1. This Court granted both parties' motions to substitute names of elected officials on November 24, 2009.

the city pursuant to § 16–2–21.4—commonly referred to as the Caruolo Act. In a Caruolo action, a school committee may file a complaint in the Superior Court to seek additional appropriations for the school department if it believes it cannot adequately run the schools with the previously authorized appropriation.

On December 26, 2007, the superintendent sent a letter to the commissioner of the Rhode Island Department of Elementary and Secondary Education, purportedly seeking alternatives or waivers with regard to certain legal and regulatory requirements, in an attempt to garner approximately $4 million in budget savings. Such requests are required before a Caruolo action may be brought. The superintendent's proposals included requesting additional state funding for special and vocational education programs, as well as elimination of all non-special education student transportation and increasing special education class size. The commissioner denied the superintendent's requests on January 15, 2008.

On January 22, 2008, the school committee sent a letter to the city council requesting a supplemental appropriation of $3,839,190. The school committee indicated that if the city council did not respond within fifteen days, the school committee would "assume that [its] response is in the negative, and [the school committee] will proceed accordingly." The city council did not specifically respond to the school committee's request within fifteen days, although the school committee and the city met on a number of occasions over the next few months in an effort to resolve the budget problems.

In April 2008, the school committee made a presentation to the city council on the school department budget deficit. At this meeting, the school committee said that the school budget deficit was then projected to be approximately $4.9 million for FY 2007–2008. The city council then passed a resolution asking the mayor to seek a writ of mandamus requiring the school department to operate within its appropriated budget for the school year in accordance with state law. Thereafter, the school committee filed the instant Caruolo action against the city on May 13, 2008.

Around this same time, the school committee submitted its budget for FY 2008–2009 to the city council. The school committee requested $132,810,730 for FY 2008–2009, including $93,884,319 in direct city appropriations. At some point after May 15, 2008, the city council level-funded the school committee for the coming school year, appropriating $125,340,048. In response, the school committee adopted a revised budget on June 16, 2008. This "revised" budget included a "budget reconciliation" item, however, similar to the one previously used in the FY 2007–2008 budget—except that this item now eliminated a $4,931,704 operating deficit. At trial, Joseph Balducci, the chief financial officer of the Cranston School Department, testified that the $4.9 million represented the reduction in expenditures to be realized as a result of the instant Caruolo action.

In June 2008, the city filed an answer and a counterclaim asking the Superior Court to order the school committee to file corrective action plans for the FY 2007–2008 budget and to refrain from certain expenditures.[2] The city subsequently filed a separate action against the school committee requesting the same relief as the counterclaim.

On June 23, 2008, upon the request of the mayor, the city council passed a resolu-

---

**2.** The mayor and finance director filed their answer on June 16, 2008. The city council filed its answer on September 2, 2008, after the conclusion of trial.

tion directing the city finance director to create a deficit reduction/loan account, into which the city council appropriated approximately $4,138,000. This sum was intended for payment of outstanding school committee contractual obligations and invoices for FY 2007–2008. The city did not consider this loan to be an additional appropriation to the school department, nor did it agree to factor the sum into the city's "maintenance of effort" for the next year under G.L.1956 § 16-7-23.

Thereafter, the city moved to consolidate the separate actions. On July 10, 2008, the trial justice granted the motion to consolidate, noting that evidence should be submitted for both actions and that the parties should identify specifically which lines of questioning were directed exclusively to the city's counterclaim and complaint. She indicated that she would "save for another day" the issue of whether additional evidence might be needed for the city's action. An order implementing the trial justice's decision was not entered until July 21, 2008, in the midst of the bench trial. The order stated that both actions involved "common questions of law and fact, such that it would further the interests of judicial economy to have the two cases tried and decided together." The order further stated that at the close of testimony, the trial justice would hear argument on whether additional testimony was necessary on the city's complaint and counterclaims. The order also indicated that the trial justice "may decide the merits of the Caruolo action first and reserves the right to bifurcate for decision the legal issues raised in [the city's] counterclaims and the [c]ity's [c]omplaint."

Shortly after trial commenced, the school committee filed an emergency motion for a writ of mandamus to compel the city to authorize the payment of certain FY 2007–2008 expenses, to be paid out of the FY 2008–2009 appropriation or out of the FY 2007–2008 cash reserves. On July 21, 2008, the trial justice issued a writ of mandamus requiring the city to release $559,143 from the FY 2007–2008 cash reserves. The trial justice did not authorize any expenditures to be made out of the FY 2008–2009 appropriation for the payment of FY 2007–2008 expenses, and noted that the authorized payments "would not be deemed an admission by the [d]efendants for any purpose in the instant action."

## A

### Trial Testimony

A bench trial was held in July 2008. The first witness, Mr. Sweeney, an education consultant for the school committee, testified that he was hired in April 2007 with the understanding that the school committee might have to file a Caruolo action for FY 2007–2008. He was hired to perform an in-house audit to examine all the school department's programs, which audit eventually could be used to support a Caruolo action. Mr. Sweeney opined that all the school department expenses made in FY 2007–2008 (except for two programs [3]) were required by law or pursuant to the basic education program (BEP) set by the Rhode Island Board of Regents for Elementary and Secondary Education. He testified that the school department still needed approximately $4.6 million to cover its expenses for FY 2007–2008. He noted that the instant case was unusual because most Caruolo actions attempt to

---

**3.** The two exceptions were the EPIC Program for gifted students and the Junior ROTC program at Cranston East High School. Mr. Sweeney qualified this statement, however, by

noting that because the EPIC Program had been approved by the commissioner, it therefore could be considered a mandated program.

project the amounts needed by the school department to finish the year, but in the instant case the school year was already over and the school department was calculating its actual shortfall. During cross-examination, Mr. Sweeney testified that he did not recommend that any programs or personnel be reduced, reorganized, or eliminated, nor did he advise the school committee to file a corrective action plan with the auditor general or notify the city council that the school committee was anticipating a budget deficit as early as July 2007. He also did not recommend the filing of a corrective action plan for FY 2008–2009.

Raymond Votto, Jr., the chief operating officer for the Cranston public school system, testified that the superintendent's original FY 2007–2008 budget proposal was reduced by the school committee. Under cross-examination, he conceded that, under the teacher collective-bargaining agreement, the school committee was empowered to lay off up to 3 percent of teachers during FY 2007–2008, but the committee did not do so. It appears that the school committee laid off fifty-nine teachers in February 2007; forty-three of these teachers were later recalled, four resigned, one retired, and only eleven were discharged permanently. Mr. Votto further testified that the school department had laid off approximately ten additional personnel for FY 2008–2009, which amounted to about 1 percent of personnel.

Peter Nero, then-assistant superintendent, testified that he had reviewed a report prepared by the Abrahams Group and Parmelee, Poirier & Associates (Abrahams report), which was prepared in 2004 as a result of a Caruolo action filed by the school committee in September 2003 regarding the FY 2003–2004 school budget. The Abrahams report consisted of a performance audit of the school department and operational recommendations. The recommendations contained various cost-saving measures that could have saved school department up to approximately $12 million. Mr. Nero testified that the school department had implemented a number of the recommendations contained in the Abrahams report. He acknowledged, however, that most of the implemented recommendations were adopted for FY 2008–2009, not FY 2007–2008.

Mr. Balducci, the school department's chief financial officer, testified that he was not aware until April 1, 2007, that the city intended to level-fund the school department for FY 2007–2008. Mr. Balducci stated a $3.1 million deficit was projected as early as July 2007. He indicated that the school department's corrective action plan at that time was simply to seek additional funding from the city. He acknowledged that the FY 2007–2008 budget proposed by the school committee exceeded a statutory tax cap. Mr. Balducci further testified that a corrective action plan for the FY 2007–2008 deficit was not filed with the mayor, the city council, or the auditor general. Turning to the FY 2008–2009 budget, Mr. Balducci stated that the projected $4.9 million deficit from FY 2007–2008 was carried over into FY 2008–2009. He testified that he assumed that the instant Caruolo action would be successful, and thus the $4.9 million eventually would be paid. Mr. Balducci admitted that the FY 2008–2009 budget would immediately have a $4.9 million deficit if the school committee's suit was not successful.

According to Superintendent Richard Scherza, the school budget did not have much "fat," and the school committee "had been very responsibl[e] in scrutinizing [the budget] and actually * * * making some painful cuts." Mr. Scherza admitted that he presented a budget to the school committee in excess of a statutory tax cap.

Although he was aware that the budget adopted by the city council would be insufficient to run the existing programs, operations, facilities, and personnel for FY 2007–2008, he did not institute austerity measures at that time. Indeed, such measures were not instituted until approximately eight months later. He noted that, as a cost-saving measure, fifteen citywide directors were eliminated for FY 2008–2009. Elimination of citywide directors was one of the recommendations of the 2004 Abrahams report and resulted in a savings of approximately $100,000 per director. Mr. Scherza testified that there was no discussion of eliminating those positions in the winter of 2007.

Walter Edge, another educational consultant retained by the school committee, opined that the school budget for FY 2007–2008 and its adjustments were reasonable. He stated that if the city had gotten $3.5 million through a tax increase and another $1 million from the state in aid, this essentially would have eliminated the $4.5 million deficit.

Stephen Woerner, internal auditor for the city council, stated that although some members harbored concerns that the school committee might not be able to operate within the appropriated budget, the council was only definitively aware of a $4 million deficit in March or April of 2008. He noted that there had been errors on the FY 2007 tax bills and levy, and that a FY 2008 tax increase helped resolve those errors and did not support increases in the FY 2007–2008 school budget.

The city's education consultant presented a different picture of the school department's management of its deficit. Salvatore Augeri, a retired superintendent for Westerly, testified that a series of cuts could have been made to programs that exceeded the BEP and state and federal mandates. He calculated that the school department could have realized $7.5 million in savings by eliminating excessive personnel and other expenditures at the time it was developing the FY 2007–2008 budget, while still satisfying its various mandates and BEP requirements.

Michael Traficante, chairman of the school committee, testified that he proposed consolidation considerations to the city in April 2008 that would have helped the school department to balance its budget. He also indicated that the "Mayor was informing the Superintendent at that time * * * to avoid [filing a] Caruolo action at all possible costs and that we could possibly work out a solution" to the deficit problem.

The final two witnesses to testify at trial were city finance director Corsino Delgado and Jeffrey Wadovick, a certified public accountant retained by the city's counsel to review school financial documents. Mr. Delgado noted that the vast majority of a city tax increase for FY 2007–2008 plugged a $6 million hole incurred the previous year in areas not related to the school department.

Mr. Wadovick testified that the budget for the school department was cumbersome and did not provide a clear summary of expenditures. He also faulted the school committee for not coming close to meeting the Abrahams report recommendations, especially those proposing better accounting and budgeting practices. He opined that the school department did not adhere to its budget because it overspent on 450 line item accounts out of a total of 2100 accounts. He further testified that the "budget reconciliation" line item in the FY 2007–2008 budget was "[a] very funny line item" and concluded that "[the school committee] could not take any money from anywhere else in the budget or reduce it on another line and therefore, they came up with the line called a 'budget reconcilia-

tion'—[so that] total expenses would continue to be in line with what was originally appropriated." Mr. Wadovick also opined that the school committee's reliance on a Caruolo action for revenue was not a sound budgeting practice. He concluded that the school department had deficit spent its original appropriations by $4,496,344 during FY 2007–2008 "by not properly following what was given to them."

After the conclusion of Mr. Wadovick's testimony, neither party indicated that it wished to submit additional testimony or evidence. The city then moved for judgment as a matter of law under Rule 52(c) of the Superior Court Rules of Civil Procedure. The city advanced two grounds to support its motion—one jurisdictional and the other substantive. First, the city argued that the school committee had failed to demonstrate that several conditions precedent to properly pursuing a Caruolo action had been met (namely, revision of the FY 2007–2008 budget to adhere to the city's budget appropriation, timely pursuit of waivers from the commissioner, timely request for additional funds from the city, and timely commencement of a Caruolo action as soon as a deficit was likely). Second, the city argued that the school committee had failed to meet its burden of proof under the Caruolo Act because its experts did not establish that an additional $4.5 million was necessary to satisfy the BEP, state and federal mandates, and contracts. The school committee responded that the Caruolo Act is a stand-alone statutory enactment, and that none of the conditions precedent cited by the city are mentioned in the statute itself. The school committee further argued that it had satisfied the burden of proof under the act.

The city also filed a motion for a mandatory injunction and/or a writ of mandamus to compel the school committee to prepare corrective action plans to cure the actual FY 2007–2008 budget deficit and the anticipated FY 2008–2009 deficit, as well as to submit those plans to the city and to the auditor general under §§ 16–2–9 and 16–2–21. The city further requested that the court order the school committee to refrain from certain expenditures until final resolution of the case, unless necessary to comply with state and federal mandates. Finally, the city asked that a special master be appointed to assume fiscal management of the school department and to identify potential efficiencies that could be realized for FY 2008–2009.

After arguments on the merits of these motions, the parties agreed to conduct a joint program and performance audit for FY 2008–2009, and the trial justice so ordered. When asked whether this joint audit would affect the city's claims, the city's counsel suggested that the trial justice could still bifurcate her decision by deciding the Caruolo action first, and then deciding the city's claims.

### B
### Trial Justice's Decision

The Superior Court issued a written decision on August 25, 2008. The trial justice dismissed the school committee's Caruolo action because she determined that the school committee failed to comply with numerous statutory prerequisites to filing a Caruolo action. Specifically, the trial justice noted that the school committee (1) failed to file a corrective action plan; (2) did not amend its budget to conform to the city council's lowered appropriation; (3) failed to timely petition the commissioner for waivers from state regulations and requirements; (4) failed to minimize expenses; (5) failed to timely alert the mayor and city council about the expected school budget deficit; and (6) failed to file its Caruolo action in a timely fashion. She

observed that the school committee's Caruolo action was the latest Caruolo action ever filed in the Superior Court. Indeed, the school year was nearly complete by the time the action was filed. The trial justice further noted that by the time the matter was heard before the Superior Court, the school committee had received most of the money it sought through a $4.1 million loan from the city.

The trial justice also granted, in part, the requests for relief in the city's complaint and counterclaim. She issued a writ of mandamus ordering the school committee to file a corrective action plan to address the budget deficit for FY 2007–2008. The writ instructed the school committee to detail how the school committee intends to repay the $4.1 million loan from the city and replenish the $550,000 from its cash reserves that was used to cover school department expenses. In addition, she issued a writ of mandamus, ordering the school committee to file a corrective action plan for the FY 2008–2009 budget in light of the fact that it already showed a deficit as a result of the carryover of the FY 2007–2008 debt. The trial justice held the city's request for a court-ordered freeze on school department spending and a declaration with regard to the school committee's compliance with a statutory cap on spending in abeyance, subject to the filing of corrective action plans, the joint program audit for FY 2008–2009, and any further proceedings. The trial justice additionally reserved decision on the city's request for the appointment of a special master, subject to the same conditions.

The trial justice concluded that the Caruolo Act was intended "to aid a school [committee] immediately after it determines that it will not be able to meet its mandates without incurring a deficit, in order to finish out the school year with a balanced budget." As the trial justice ob-

served: "A Caruolo action is not intended to be used as an end of the year budget plug to fix a deficit that the school committee had anticipated for months before the school year began." In the instant case, the trial justice found that the school committee was not proactive about preventing or possibly curing its deficit. Specifically, she found that the school committee was aware of the possibility of a deficit in the spring of 2007 and projected a $3.5 million deficit in October 2007, yet it did not immediately file a corrective action plan or notify the city. She also noted that the school committee's untimely filing of its Caruolo action left no time for the city to perform a program audit.

## C

### Post–Trial Motions

The school committee thereafter filed a "Motion for Reconsideration/Amendment of its Decision and Alternative Motion for New Trial." In the event the trial justice denied the motion for reconsideration, the school committee also filed a motion for a stay and a motion for entry of judgment. A hearing on the motions was held on September 17, 2008. At the hearing, the trial justice first entered judgment in favor of the city on the school committee's Caruolo action and entered judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure on the mandamus portions of the city's complaint.

The school committee stated that it was not aware that the trial on the Caruolo action was also a trial on five out of six counts in the city's complaint. It argued that the trial justice therefore erred in ruling upon the city's claims without adequate notice. The school committee also noted that the trial justice's written opinion erroneously stated that the school committee had not filed answers and affirmative defenses to the city's counterclaim and

complaint. It indicated that the parties did not dispute that the school committee answered the city's complaint and counterclaim. The city countered that the cases were consolidated by order of the court and that, at trial, certain questions pertained exclusively to the city's complaint. The city also argued that both parties had an opportunity to present additional evidence, but both declined to do so.

The trial justice denied the school committee's motion for reconsideration. She stated that there was a "significant overlap of testimony and legal issues between the Caruolo action and the [c]ity's counterclaim and complaint[,]" and her principal concern in consolidating the two cases "was making sure that witnesses who are in Court for purposes of the Caruolo action in the first instance would not need to be recalled [at] any later proceeding." She indicated that extensive evidence was presented on both the FY 2007–2008 and the FY 2008–2009 budgets, and she concluded that the city's complaint and counterclaim had been tried by implication. The trial justice also noted that the school committee never sought to present additional evidence, nor had it indicated what other evidence it would present if given the opportunity.

The trial justice additionally stated that her failure to read the school committee's answers to the city's counterclaim and complaint had no effect on her decision because she approached the case as though the school committee had denied all of the city's allegations. The trial justice concluded that "[t]here is nothing in the answers or affirmative defenses * * * that in [any way] changes this Court's decision." For these reasons, the school committee's motion for reconsideration and/or amendment of the decision was denied. The trial justice also denied the school committee's motion for a stay of the order requiring

the development of a corrective action plan for the FY 2007–2008 budget.

Final judgment in the school committee's action and partial final judgment under Rule 54(b) in the city's action were entered on September 17, 2008. The school committee filed notices of appeal from those judgments on September 19, 2008. This Court granted the city's motion to consolidate the appeals and denied the school committee's motion to stay the writ of mandamus pertaining to FY 2007–2008. The consolidated appeals were also ordered to be expedited.

## D

### Issues on Appeal

On appeal the school committee advances numerous arguments: (1) the trial justice erred in concluding that the school committee did not comply with the statutory prerequisites to filing a Caruolo action; (2) the trial justice erred in considering other education-related statutes besides the Caruolo Act because the Caruolo Act is a stand-alone statute; (3) the trial justice erred in looking beyond FY 2007–2008 in fashioning remedies; (4) the trial justice erred in consolidating the two actions; (5) there was insufficient notice to alert the school committee that the July 2008 proceedings were intended to be a full trial on the city's complaint and counterclaim; (6) the trial justice erred in rendering a decision without reading the school committee's answers to the city's complaint and counterclaim; (7) the trial justice erred in speculating about the potential effect of implementing the recommendations of the Abrahams report in her decision; (8) the trial justice made numerous findings that were erroneous or unsupported by the evidence; (9) the trial justice failed to make the proper findings needed to order injunctive relief; and (10) the trial justice

erroneously denied its motion for reconsideration.

The city responds that although the school committee nominally met the requirements of § 16–2–21.4, it did so in such a dilatory and ineffectual fashion as to be in noncompliance with the Caruolo Act. The city also contends that the other statutory obligations contained in chapter 2 of title 16 are relevant on the issue of whether the school committee acted in a timely fashion. It notes that § 16–2–21 requires a balanced school budget and § 16–2–9 requires a school committee not to incur debt. The city argues that the trial justice did not find a program audit to be a prerequisite, but merely referred to such an audit as evidence that the school committee's Caruolo action was not timely filed. On the issue of consolidation of the two cases, the city argues that the Caruolo Act does not preclude the consideration of other issues and counterclaims. The city further argues that the school committee was on fair notice that both of the consolidated cases were before the Superior Court for disposition. On the issue of the school committee's filed, but apparently overlooked, answers, the city argues that the trial justice's failure to read the pleading had no effect on the outcome of the case.

The city also argues that the trial justice did not err in her findings. The city contends that the trial justice simply highlighted the Abrahams report in discussing the school committee's budgeting deficiencies and that the record supported the trial justice's findings that the Caruolo action was untimely. The city further argues that the school committee's motion for reconsideration was properly denied because the school committee presented no new evidence. The city contends that the trial justice did not need to make findings on

the elements for injunctive relief because it actually granted a writ of mandamus.

## II

## Discussion

## A

## Procedure for Bringing a Caruolo Action

### 1. Standard of Review

 It is well established that "[w]hen presented with questions of statutory interpretation this Court engages in a *de novo* review." *Liberty Mutual Insurance Co. v. Kaya*, 947 A.2d 869, 872 (R.I. 2008) (quoting *State v. LaRoche*, 925 A.2d 885, 887 (R.I.2007)). "[W]hen the language of a statute is clear and unambiguous, [this Court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *LaRoche*, 925 A.2d at 887 (quoting *State v. Oliveira*, 882 A.2d 1097, 1110 (R.I.2005)). When interpreting a statute, however, this Court's "ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Hanley v. State*, 837 A.2d 707, 711 (R.I.2003) (quoting *Oliveira v. Lombardi*, 794 A.2d 453, 457 (R.I.2002)).

### 2. The Purpose of the Caruolo Act

Section 16–2–21.4 provides in pertinent part as follows:

"(a) Notwithstanding any provision of the general or public laws to the contrary, whenever a city, town, or regional school committee determines that its budget is insufficient to comply with the provisions of [ § ] § 16–2–21, 16–7–23, or 16–7–24, the city, town, or regional school committee shall adhere to the appropriated budget * * *. The chairperson of the city, town, or regional school committee, in accordance with the provisions of § 16–2–9, shall be required

to petition the commissioner, in writing, to seek alternatives for the district to comply with state regulations and/or provide waivers to state regulations and, in particular, those which are more restrictive than federal regulations that allow the school committee to operate with a balanced budget. * * * In the petition to the commissioner, the school committee shall be required to identify the alternatives to meet regulations and/or identify the waivers it seeks in order to provide the commissioner with the revised budget which allows it to have a balanced budget within the previously authorized appropriation. The commissioner shall respond within fifteen (15) calendar days from the date of the written petition from the school committee. If the commissioner does not approve of the alternatives to meet regulations or the waivers from regulations which are sought by the school committee, or if the commissioner does not approve of the modified expenditure plan submitted by the school committee, then: (1) within ten (10) days of receiving the commissioner's response, the school committee may submit a written request to the city or town council for the council of the municipality to decide whether to increase the appropriation for schools to meet expenditures." * * *.

"(b) In the event of a negative vote by the appropriating authority, the school committee shall have the right to seek additional appropriations by bringing an action in the superior court for the county of Providence and *shall be required to demonstrate that the school committee lacks the ability to adequately run the schools for that school year with a balanced budget within the previously authorized appropriation or in accordance with §§ 16–2–21, 16–2–23, 16–7–23, and 16–7–24.* In no event shall any court order obtained by the school committee have force and effect for any period longer than the fiscal year for which the litigation is brought. * * * Upon the bringing of an action in the superior court by the school committee to increase appropriations, the chief executive officer of the municipality, or in the case of a regional school district the chief elected officials from each of the member municipalities, shall cause to have a financial and program audit of the school department conducted by the auditor general, the bureau of audits, or a certified public accounting firm qualified in program audits." (Emphasis added.)

The school committee relies on the phrase "[n]otwithstanding any provision of the general or public laws to the contrary" in § 16–2–21.4(a), to support its argument that the General Assembly intended the Caruolo Act to be applied without reference to any other section of the General Laws. The Caruolo Act itself, however, explicitly refers to several other sections of chapters 2 and 7 of title 16, which require, *inter alia,* that school appropriations satisfy the BEP, that the school committee amend its budget to match its appropriation, and that the school committee promptly notify the city council if the school department is operating outside its budget.

This Court has recently had occasion to construe the statutory meaning of the word "notwithstanding." In *Planned Environments Management Corp. v. Robert,* 966 A.2d 117 (R.I.2009), this Court interpreted "notwithstanding" to mean " 'regardless of hindrance by.' " *Id.* at 123 (quoting *Defenders of Animals, Inc. v. Department of Environmental Management,* 553 A.2d 541, 543 (R.I.1989)). The use of this term in a statute does not automatical-

ly imply that a section should be considered in a vacuum.

Rather, this Court has held that "if two statutes are found not to be inconsistent with one another and relate to the same subject matter, they are deemed 'in *pari materia* and should be considered together so that they will harmonize with each other and be consistent with their general object and scope * * *.'" *Berthiaume v. School Committee of Woonsocket*, 121 R.I. 243, 249, 397 A.2d 889, 893 (1979) (quoting *Providence Teachers' Union, Local 958 v. School Committee of Providence*, 108 R.I. 444, 449, 276 A.2d 762, 765 (1971)). Upon careful examination of the Caruolo Act, as well as the other pertinent sections of title 16, we are satisfied that § 16–2–21.4 is in no way "hindered by" the requirements of these other sections. Therefore, all relevant sections should be construed to harmonize with each other to give full force and effect to the intention of the Legislature.

Under § 16–2–21(b), which is explicitly referred to in the Caruolo Act,

"[i]f the amount appropriated by * * * the city or town council * * * is either more or less than the amount recommended and requested by the school committee, the school committee shall, within thirty (30) days after the appropriation is made, amend its estimates and recommendations so that expenses are no greater than the total of all revenue appropriated by the state or town or provided for public schools under the care, control, and management of the school committee."

In the same vein, § 16–2–18 provides in part:

"If, in any fiscal year a school committee is notified that estimated expenses may exceed total available appropriations, the school committee shall adopt and implement a plan to maintain a balanced school budget, which plan shall provide for continuous regular public school operations consistent with the requirements of § 16–2–2; provided, that in no fiscal year shall a deficit be permitted for school operations."

Similarly, § 16–2–9 sets forth certain duties incumbent upon the school committees—*inter alia*, "[t]o adopt a school budget to submit to the local appropriating authority[,]" § 16–2–9(a)(9), "[t]o adopt any changes in the school budget during the course of the school year[,]" § 16–2–9(a)(10), to "maintain[ ] a school budget which does not result in a debt[,]" § 16–2–9(d), and to, "within thirty (30) days after the close of the first and second quarters of the state's fiscal year, adopt a budget as may be necessary to enable it to operate without incurring a debt," § 16–2–9(e). Moreover,

"[i]n the event that any obligation, encumbrance, or expenditure by a superintendent of schools or a school committee is in excess of the amount budgeted or that any revenue is less than the amount budgeted, the school committee shall within five (5) working days of its discovery of potential or actual over expenditure or revenue deficiency submit a written statement of the amount of and cause for the over obligation or over expenditure or revenue deficiency to the city or town council president and any other person who by local charter or statute serves as the city or town's executive officer; the statement shall further include a statement of the school committee's plan for corrective actions necessary to meet the requirements of subsection (d). The plan shall be approved by the auditor general." Section 16–2–9(f).

The requirements of § 16–2–9(d) apply "[n]otwithstanding any provisions of the general laws to the contrary," and it is

eminently consistent with the manifest purpose of the Caruolo Act that they do so.

In light of the language of the Caruolo Act itself, as well as the other pertinent provisions of chapters 2 and 7 of title 16, it is clear that the General Assembly intended school committees to amend their budgets, request waivers, and request additional appropriations from their host municipalities at the first indication of a possible or actual deficit. The General Assembly's intent to encourage *expeditious* action in instances of potential school deficit spending is both practical as a matter of public policy and indisputable as a matter of statutory construction.

### 3. Timing of the School Committee's Caruolo Action

In essence, it appears the trial justice's decision was partially based on the equitable defense of laches, an argument that was advanced during argument on the city's motion to dismiss under Rule 52(c). For the purposes of appellate review, "the application of the defense of laches is generally committed to the discretion of the trial justice." *O'Reilly v. Town of Glocester,* 621 A.2d 697, 703 (R.I. 1993). We will not reverse the trial justice's decision on what constitutes laches on appeal "unless it is clearly wrong." *Arcand v. Haley,* 95 R.I. 357, 364, 187 A.2d 142, 146 (1963) (quoting *Lombardi v. Lombardi,* 90 R.I. 205, 209, 156 A.2d 911, 913 (1959)). As this Court has explained,

"[l]aches is an equitable defense that precludes a lawsuit by a plaintiff who has negligently sat on his or her rights to the detriment of a defendant. * * * A court applying the defense of laches must use a two-part test. First, there must be negligence on the part of the plaintiff that leads to a delay in the prosecution of the case. * * * Second, this delay must prejudice the defendant."

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right." *O'Reilly,* 621 A.2d at 702 (quoting *Chase v. Chase,* 20 R.I. 202, 203–04, 37 A. 804, 805 (1897)).

In recent years, this Court has repeatedly observed that the defense of laches is not as limited in scope as it once was. *See, e.g., Raso v. Wall,* 884 A.2d 391, 394 n. 8 (R.I.2005) ("Although the concept of laches originated in the courts of chancery, it is today often employed in situations in which the relief sought is not readily classifiable as equitable in nature.").

The timeliness of a school committee's actions cannot be an inapposite consideration in light of the Caruolo Act and title 16's overarching intention that school committees ensure comprehensive and uninterrupted educational services within appropriated budget amounts. School committees and school department administrators are exhorted to act quickly when they discover actual or potential budget problems, *see, e.g.,* §§ 16–2–9(f), 16–2–21, and the Caruolo action itself is entitled to expedited procedures in the Superior Court under § 16–2–21.4. *See generally Puleio v. Vose,* 830 F.2d 1197, 1203 (1st Cir.1987) ("The law ministers to the vigilant not to those who sleep upon perceptible rights.").

■ We therefore affirm the trial justice's interpretation of § 16–2–21.4 as requiring that a Caruolo action "be brought in a timely manner from when a school committee discovers that it cannot operate in a non-deficit position while complying with its mandates and contracts. * * * [A] Caruolo action is intended to aid a school immediately after it determines that it will not be able to meet its mandates without incurring a deficit * * *." Likewise, we concur that "it is contrary to the intent of the Legislature to allow a school committee to knowingly incur an end of the year deficit where corrective action can no longer be taken, only to be appropriated additional funds under the Caruolo Act." Far from being clearly wrong, the trial justice's application of the doctrine of laches in the instant case was eminently justified.

### 4. Conditions Precedent to a Caruolo Action

■ A school committee may file a Caruolo action "in instances where the school committee determines that its annual appropriated budget is not sufficient to meet state imposed educational mandates while satisfying the school committee's statutory obligation to maintain a 'balanced' budget." *Beil v. Chariho School Committee*, 667 A.2d 1259, 1259 (R.I.1995) (mem.).

This Court has set forth the following prerequisites that a school committee must meet before filing a Caruolo action:

"The first prerequisite is that the school committee must adhere to the budget that the town has appropriated. Second, the school committee is required to petition the commissioner of edu-

cation in writing to seek alternatives and/or waivers to state regulations that would allow the school committee to operate with a balanced budget. Third, if the commissioner denies the requested alternatives and/or requests for waivers, the school committee may request that the city council reconsider whether to increase the appropriation for schools to meet expenditures. If the efforts outlined above fail to conform to the school budget or fail to increase the appropriation sought by the school committee, the committee may file an action in the Superior Court." *School Committee of Johnston v. Santilli*, 912 A.2d 941, 941 n. 1 (R.I.2007) (mem.) (internal citations omitted).

As already discussed, each of these prerequisites inherently requires timely action.

■ Under § 16–2–21.4, the school committee is required to adhere to its appropriated budget while it pursues additional funding. Upon review of the record, we are convinced that ample evidence was adduced at trial to support the trial justice's conclusion that the school committee failed to amend its budget to conform to the city council's appropriation.[4] This failure supports the trial justice's conclusion that the school committee did not make a good-faith or timely effort to operate within the city council's school budget appropriation.

Turning to the second prerequisite set forth in *Santilli*, the Caruolo Act requires the school committee to petition the commissioner of education in writing to seek alternatives and/or waivers to state regulations that would allow the school committee to operate with a balanced budget

---

4. Mr. Balducci testified that the school committee did not immediately amend its budget to match the city's reduced appropriation in July 2007. The "budget reconciliation" line item added to the school department budget in November 2007 strikes us more as financial legerdemain than a genuine attempt to conform to the actual appropriation.

without violating law, regulation, or contract. *See Santilli*, 912 A.2d at 941 n. 1. We agree with the trial justice that this prerequisite necessarily incorporates a timeliness requirement.

We further note that, in its letter to the commissioner, the school committee apparently did not request substantial alternatives or waivers. Indeed, the school department's primary "alternatives" were simply requests for supplementary state funding. This Court finds ample evidence in the record to support the trial justice's conclusion that the school committee did not make a good-faith effort to analyze areas where savings could be found in the school budget that would allow the school department to operate within its appropriation. Moreover, by waiting until December 2007 to seek alternatives and waivers, there is evidence that the school committee missed opportunities to suggest additional possibilities for savings.

### 5. The Corrective Action Plan and the Caruolo Action Program Audit

The school committee contends that the trial justice erroneously cited the filing of a corrective action plan as a prerequisite to the bringing of a Caruolo action. Upon review of the Superior Court's decision, we do not agree that the trial justice ever identified such a prerequisite. Rather, the trial justice accurately observed that under § 16–2–9(f) the school committee was required to "submit a written statement of the amount of and cause for the over obligation or over expenditure or revenue deficiency to the city or town council president" within five working days of discovering its "potential or actual" budget deficit. Such notification must also "include a statement of the school committee's plan for corrective actions necessary to meet the requirements of subsection (d). The plan shall be approved by the auditor general." Section 16–2–9(f).

Upon review of the record, it is clear that the school committee failed to file such a corrective action plan in a timely manner. Superintendent Scherza and Mr. Balducci both testified that they were aware of the potential for a substantial deficit after the city council reduced the school department appropriation in July 2007. Mr. Sweeney further testified that at the time he was retained in the spring of 2007, he understood that the superintendent anticipated a substantial deficit for FY 2007–2008. By November of 2007, Mr. Sweeney had informed the school committee of a potential $3.5 million deficit. Yet in spite of this, the school committee did not inform the city council of its budget problems until January 2008.[5]

The trial justice did not base her decision to dismiss the school committee's suit on its failure to properly or timely file a

---

**5.** The school committee contends that Mr. Balducci submitted monthly budget reports to the city's finance director and controller. These monthly reports included FY 2007–2008 deficit projections as early as July 2007. Each report included a "corrective action plan"—namely "to seek additional funding from local municipality." Mr. Balducci testified that these reports were, in turn, incorporated into monthly city finance reports transmitted to city council members. This Court agrees with the trial justice that these reports do not rise to the level of affirmative action required of the school committee under G.L. 1956 § 16–2–9. First, these monthly fiscal reports do not provide "a written statement of * * * the cause for the over obligation or over expenditure or revenue deficiency" as required under § 16–2–9(f). Second, the reports were not transmitted "to the city or town council president," nor were the so-called corrective action plans "approved by the auditor general." *Id.* For these reasons, we do not consider the monthly fiscal reports to be timely or adequate notice to the city council of the school department's budget deficit.

corrective action plan, however. The trial justice simply considered the failure as evidence that the school committee did not attempt to amend its budget with any true intention to adhere to its appropriated budget as required under the Caruolo Act. We do not consider such a use of this evidence to be an abuse of discretion.

The school committee also argues that the trial justice erroneously considered the performance of a program audit by the school committee a statutory prerequisite to the bringing of a Caruolo action. Specifically, the school committee argues that it is the responsibility of the city to perform such program audits.

Upon review of the trial justice's decision, it is clear that her references to a program audit related to the timeliness of the school committee's action, not to any statutory prerequisite. The performance of a program audit pertains less to any condition precedent to filing a Caruolo suit than to the school committee's ability to satisfy its burden of proof before the Superior Court. Without the benefit of a program audit, it may be difficult for the trial justice to determine whether the school committee was doing all it could to live within its means while complying with its legal obligations. Accordingly, we discern no error in the trial justice's comments on this issue.

## B

### Consolidation of the Cases

#### 1. Standard of Review

 Rule 42(a) of the Superior Court Rules of Civil Procedure allows the consolidation of actions "involving a common question of law or fact * * * [in cases where it would] tend to avoid unnecessary costs or delay." As this Court has previously observed,

"the trial court has inherent power to order that several cases pending before it be tried together where they are of the same nature, arise from the same act or transaction, involve the same or like issues, depend substantially upon the same evidence, even though it may vary in its details in fixing responsibility, and where such a trial will not prejudice the substantial rights of any party." *Giguere v. Yellow Cab Co.*, 59 R.I. 248, 251, 195 A. 214, 216 (1937); *see also Rich v. Rich*, 94 R.I. 220, 222, 179 A.2d 498, 500 (1962).

We review the trial justice's decision to consolidate pending cases for abuse of discretion.

#### 2. The Propriety and Scope of Consolidation

 The school committee contends that the trial justice erred in consolidating the Caruolo action and the city's counterclaim and equitable suit. The school committee notes that, by its plain language, any order by the Superior Court in a Caruolo action may have force and effect only for the fiscal year at issue in the case. The school committee argues that by consolidating the cases, the trial justice's decision improperly affected FY 2008–2009 in addition to FY 2007–2008—the fiscal year at issue in the instant case.

We are convinced that the trial justice did not abuse her discretion in consolidating the instant cases. Both involve common issues of fact and law, and the resolution of the school committee's Caruolo action has an immediate and profound effect on the FY 2008–2009 budget at issue in the city's complaint and counterclaim. As this Court has observed, "[t]he causes of action remain distinct throughout * * * a [consolidated] trial and every legal right is preserved to the respective parties as fully as if the cases had been tried sepa-

rately." *Giguere*, 59 R.I. at 251, 195 A. at 216. The trial justice therefore was able to issue a separate judgment on the Caruolo action, which pertained only to FY 2007–2008, thus satisfying the terms of the Caruolo Act.

In addition, we agree with the trial justice when she observed that, in light of the Superior Court's consolidation order as well as the evidence adduced at trial, it appears that the school committee was adequately on notice that the two actions would be tried together and *could* be decided simultaneously.

## C

### The Writ of Mandamus

#### 1. Standard of Review

Although mandamus is an extreme remedy, this Court employs its "usual standard of review to the findings of the trial court." *Muschiano v. Travers*, 973 A.2d 515, 521 (R.I.2009). A trial justice's findings will not be overturned unless she overlooked material evidence, was clearly wrong, or her decision fails to do substantial justice between the parties. *Grady v. Narragansett Electric Co.*, 962 A.2d 34, 41 (R.I.2009).

#### 2. Issuance of the Writ

The school committee contends that the trial justice erred in granting injunctive relief [6] ordering it to prepare a corrective action plan for FY 2007–2008. In actuality, however, the trial justice ordered the school committee to file the corrective action plan by writ of mandamus.

A writ of mandamus may be issued when: "(1) the petitioner has a clear legal right to the relief sought, (2) the

respondent has a ministerial duty to perform the requested act without discretion to refuse, and (3) the petitioner has no adequate remedy at law." *New England Development LLC v. Berg*, 913 A.2d 363, 368 (R.I.2007).

As previously discussed, under § 16–2–9(f) the school committee had a clear obligation to file a corrective action plan with the city council within five days of the discovery of an actual or potential budget deficit. At the time the trial justice issued the writ, there was no doubt that a deficit existed for the FY 2007–2008 budget, that the school committee had been aware of the potential for such a deficit since November 2007 at the latest, and that the school committee had not filed a corrective action plan that comported with statutory requirements. In essence, the trial justice merely compelled the school committee to adhere to its preexisting statutory obligations. Not only did the school committee have a duty to file this corrective action plan, but compliance with such duty was long overdue. We discern no error.

## D

### The Superior Court's Findings of Fact

#### 1. Standard of Review

It is well settled that "[t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence * * *." *Haydon v. Stamas*, 900 A.2d 1104, 1113 (R.I.2006) (quoting *Imperial Casualty and Indemnity Co. v. Bellini*, 888 A.2d 957, 961 (R.I. 2005)). If on review "it becomes clear to

---

**6.** Contrary to what the school committee argues, there was no disposition of the city's injunctive relief claims on the merits.

us that 'the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached.'" *Grady,* 962 A.2d at 41 (quoting *Tim Hennigan Co. v. Anthony A. Nunes, Inc.,* 437 A.2d 1355, 1357 (R.I. 1981)).

### 2. The Propriety of the Findings

The school committee cites the trial justice's following findings as erroneous or unsupported by the evidence: (1) the Caruolo action was untimely; (2) the school committee did not reduce expenses and waited as late as possible to file the Caruolo action; (3) the school committee might have prevented the institution of the Caruolo action if it had filed a corrective action plan; (4) the school committee could cut programs without violating its contractual obligations; and (5) the school committee engaged in poor budgeting practices and "simply continued to spend money until it had grossly overspent its budget."

In light of this Court's deference to the findings of a trial justice sitting without a jury, it does not appear that the trial justice misconceived the evidence or was clearly wrong in making any of these findings. There is ample evidence in the record before us establishing that the school committee failed to align its budgeting practices with the city's fiscal reality, that it should have pursued a resolution by filing a corrective action plan, that it could have cut programs without violating its contractual obligations, and that it did not act in a timely fashion to reduce expenses.

### E

### Motion for Reconsideration/Alternative Motion for New Trial

#### 1. Standard of Review

The Superior Court Rules of Civil Procedure, similar to the Federal Rules of Civil Procedure, do not provide for a motion to reconsider. This Court, however, applies a liberal interpretation of the rules to "look to substance, not labels." *Sarni v. Meloccaro,* 113 R.I. 630, 636, 324 A.2d 648, 651 (1974). Historically, we have allowed "motions to reconsider" to be treated as motions to vacate under Rule 60(b) of the Superior Court Rules of Civil Procedure, and the school committee indicates in its brief that it intended its motion to be considered as such. *See, e.g., Keystone Elevator Co. v. Johnson & Wales University,* 850 A.2d 912, 916 (R.I.2004). "A Rule 60(b) motion to vacate is addressed to the trial justice's sound judicial discretion and 'will not be disturbed on appeal, absent a showing of abuse of discretion.'" *Id.* (quoting *Crystal Restaurant Management Corp. v. Calcagni,* 732 A.2d 706, 710 (R.I.1999)).

### 2. Denial of the Motion for Reconsideration/Motion for New Trial

The school committee argues that the trial justice should have granted its motion for reconsideration and amended her decision pertaining to the Caruolo action and the city's complaint and counterclaim. The school committee contends that it was not afforded proper notice or an opportunity for a full trial on the merits concerning either the counterclaim or the city's complaint.

As we have already discussed, the trial justice granted the city's request for writs of mandamus requiring the school committee to file corrective action plans for FY 2007–2008 and FY 2008–2009. The trial justice did not dispose of the city's requests for injunctive relief on the merits, and she denied the city's request for declaratory judgment. Upon review of the

record, we find the trial justice's issuance of the writs to be adequately supported by the evidence adduced at trial, and we perceive no abuse of discretion on the part of the trial justice in denying the school committee's motion to reconsider.

### F

### Other Allegations of Error

 The school committee also alleges that the trial justice's failure to consider its answers to the city's counterclaim and complaint rendered her decision "fatally flawed on due process grounds" and "fundamentally unfair." This Court cannot conclude that the slightest bit of prejudice inhered in the trial justice's failure to consider the school committee's answers.[7] The trial justice stated that, because she was unable to locate the school committee's answers in the record, she addressed the issues in the case as though the school committee had denied all the city's allegations. She later considered the answers and affirmative defenses when deciding the school committee's motion for reconsideration/amendment of its decision and alternative motion for new trial, but concluded that "[t]here is nothing in the answers or affirmative defenses * * * that in [any way] changes this [c]ourt's decision." This Court has no reason to doubt the accuracy of her statements.

Finally, the school committee suggests that the trial justice erred in considering the potential effect of implementing the recommendations of the Abrahams report. In reviewing the trial justice's decision, it is clear that the trial justice did not rely on the Abrahams report as a substantial factor in her ruling. Rather, she refers to

the report only to highlight the deficiencies in the school committee's approach to budgeting and the deficiencies in the financial review conducted by the school committee's consultants. This, in itself, does not constitute reversible error.

### III

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be remanded to the Superior Court.

---

**7.** The trial justice apparently did not overlook or ignore the school committee's answers, but rather they could not be found in the record. The school committee states that its answers were mailed to the Providence County Superi- or Court, but the trial was conducted in Washington County Superior Court. The school committee suggests that its papers may have been "lost in the shuffle" between the two clerks' offices.